**Lucion E. BAYNES, Jr., Plaintiff,**

v.

**Albert OSSAKOW, Acting Warden of Queens House of Detention, Defendant.**

**Civ. A. No. 71 C 1077.**

United States District Court, E. D. New York.

Jan. 12, 1972.

William F. Connell, Carter, Ledyard & Milburn, New York City, for plaintiff.

J. Lee Rankin, Corp. Counsel, by John S. Wellekens, Asst. Atty., New York City, for defendant.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

Plaintiff is a State prisoner at Attica Correctional Facility in upstate New York, where he is serving sentences for separate convictions of attempted robbery and perjury. He commenced this action under 42 U.S.C. § 1983, alleging that he was subjected to physical beating, arbitrary solitary confinement and other violations of his constitutional rights at the Queens House of Detention for Men in this district, to which he had been temporarily transferred in March 1971 for purposes of his trial on the perjury charge.

With considerable particularity, plaintiff alleges in an amended complaint and supporting "affirmation" that (1) at the direction of the defendant warden, he was beaten severely by prison guards and without due provocation; (2) he was placed in solitary confinement for 15 days without being given the opportunity to defend himself at a hearing; (3) he was provided with insubstantial nourishment and denied the necessary elements of hygiene; (4) he was given inadequate if not harmful medication; and (5) his mail was misappropriated and he was not permitted to communicate with his attorney. Judgment is sought declaring that plaintiff's constitutional rights have been violated and awarding him damages of $25 per day for each day he was kept in solitary confinement.[1]

The defendant has moved pursuant to Rule 12(b) (6), F.R.Civ.P., to dismiss plaintiff's action on the ground that the amended complaint fails to state a claim upon which relief can be granted. The motion is supported by an affidavit and supplemental affidavit of the defendant warden and affidavits of a deputy warden and a captain of prison guards who were among those present at an incident on June 16, 1971, as a result of which, plaintiff claims, he was beaten and then placed in solitary confinement. The court having considered these affidavits, defendant's motion will be treated as one for summary judgment as required by

---

1. Plaintiff also requests that defendant be directed to desist from holding plaintiff in "administrative segregation" and other acts of "harassment and intimidation" upon his return to the Queens House of Detention. That request is somewhat speculative, if not moot, but in any event does not require consideration now.

Rule 12(b), F.R.Civ.P.[2] See Syracuse Broadcasting Corp. v. Newhouse, 271 F. 2d 910, 914 (2 Cir. 1959).

This is another case bringing into focus a vexing social problem: the rights of a prisoner in the face of the legitimate state interest in preserving order and respect for authority in its penal institutions. In urging summary dismissal, defendant stresses that the internal management of prisons or correctional facilities is vested in and rests with the heads of those institutions operating under statutory authority, and their acts and administration of prison discipline and overall operation of the institution are not subject to court supervision or control, absent most unusual circumstances or the violation of a constitutional right. In this Circuit, defendant contends, the federal courts have declined to find an Eighth Amendment violation unless the punishment inflicted can properly be termed "barbarous" or "shocking to the conscience", citing Church v. Hegstrom, 416 F.2d 449 (2 Cir.1969), and Sostre v. McGinnis, 442 F.2d 178 (2 Cir. 1971).

Here, says defendant, no such violation of plaintiff's rights occurred. According to the moving affidavits, plaintiff was placed in "administrative segregation", not punitive segregation, and only after proper hearing on a written report of his infraction, a photocopy of which is annexed to defendant's affidavit.[3] While in such segregation, it is asserted, an inmate is not denied any rights or privileges enjoyed by the general prison population, nor deprived of his right to communicate with or be vis-ited by his lawyer.[4] Plaintiff's other alleged grievances are viewed by defendant as "groundless fabrications" which should be dismissed.

■ No searching analysis is necessary to conclude that the contending parties are in sharp conflict about material facts relevant to the claims alleged in the complaint. Plaintiff's "affirmation"—a personally hand-written statement made expressly under the penalties of perjury—must be treated as a sufficient affidavit for these purposes. Rule 43(d), F.R.Civ.P. In detail it relates that on June 16, 1971, as plaintiff was en route to the Queens County Criminal Court, he saw a detention house officer, identified by badge number, remove from the U. S. mail box a letter plaintiff had written and place it in his pocket. Upon plaintiff's return from court several hours later, he admits he got into a verbal dispute with a receiving officer when commanded to submit to a "strip-search" in abusive and foul language, which plaintiff says he replied to in kind. Plaintiff was separated from the other prisoners and the matter was initially referred to Captain Dunne, whose affidavit supports the motion to dismiss the action.

The Dunne affidavit recites that when defendant entered the receiving room, accompanied by several deputy wardens, he was informed of plaintiff's refusal to strip for a search. Defendant told plaintiff that if he did not strip, he would be forced to do so. Plaintiff thereupon started to strip and defendant left the room with the deputies.

---

2. Rule 12(b) provides in pertinent part: If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. . . .

3. The report states that plaintiff was "placed in segregation" pending a hear-ing before the disciplinary officer or board, without distinction as between administrative or punitive.

4. Not to be confused with plaintiff's present attorney who volunteered to represent him at the court's request (28 U.S.C. § 1915(d)), plaintiff having previously been granted leave to proceed in forma pauperis. That attorney interviewed him at the Queens House of Detention for purposes of this action prior to plaintiff's return to Attica.

Plaintiff's version differs sharply. He states he was unaware of defendant's identity as the warden and that defendant threatened him with force in terms which prompted plaintiff to retort, "Mister, you ain't gonna do nothing to me." According to plaintiff, defendant then ordered a squad of some twenty regular officers plus six "white shirt" officers (deputies or captains) to strip plaintiff. This was done, says plaintiff, after he was beaten severely about the head and body with clubs, fists and feet. Thereafter, he asserts, he was dragged to the "bing"—the third floor punitive segregation section—where he was confined in a strip cell, bare of anything except sink and toilet, given improper medication and cut off from visitors and correspondence until he was returned to prison upstate.

 Wright v. McMann, 387 F.2d 519 (2 Cir. 1967), relied on by defendant, has made it clear in this Circuit that a State prisoner's complaint of violation of his constitutional rights may not be summarily dismissed because of feared intrusion upon a domain reserved to prison officials or state courts. It also reminded us that over sixty years ago the Supreme Court held that the Eighth Amendment "may acquire meaning as public opinion becomes enlightened by a humane justice" and is not forever fastened to the ancient forms of cruel and unusual punishment "which gave it birth" (*id.* at 525). Thus modern prison discipline imposed for violation of prison regulations cannot be of such character as to offend "civilized standards of humane decency" (*id.* at 526).

 Cases in this Circuit since *Wright* have further developed and clarified the application of such standards. Although, as defendant contends, Sostre v. McGinnis, *supra*, recognizes that segregated confinement does not itself violate the Constitution and appears to be a principal disciplinary tool in both State and federal prisons, nevertheless it also pointed out that a prison warden who inflicts such confinement as punishment may be held personally liable in damages if it was imposed for discriminatory or other improper reasons.[5] Inmates of the Attica Correctional Facility v. Rockefeller, 453 F.2d 12 (2 Cir. 1971), Sept.Term 1971, decided last month, made it clear that even if some corporal punishment of prisoners may be permitted under the Constitution, beatings or physical abuse wholly beyond any force needed to maintain order cannot be tolerated (*id.* at 757). While the court recognized that abusive conduct representing a single or short-lived incident might not warrant injunctive relief, there was no intimation that a claim for monetary damages in an appropriate case could not be entertained.

 Here the court is confronted with conflicting factual versions of an incident which forms the core of plaintiff's claim against defendant. Defendant stands in the position of a party moving for summary judgment. Only a week ago district courts in this Circuit were reminded that such a party " 'had the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material [he] lodged must be viewed in the light most favorable to the opposing party.' Adickes v. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); see also Shinabarger v. United Aircraft Corp., 381 F.2d 808, 810 (2d Cir. 1967). Furthermore, when the factual allegations in the pleadings of the party opposing summary judgment are supported by affidavits or other evidentiary material, they must be taken as true in ruling on the motion." First National Bank of Cincinnati v. Pepper, 454 F.2d 626 (2 Cir. 1972), Sept.Term 1971, de-

---

5. In the instant case defendant's affidavits unanimously state that plaintiff, after defendant told him he would be forcibly stripped for search, started to strip his clothes, thereby, it would seem, indicating submission to the defendant's order. There seems to be no dispute that plaintiff was immediately placed and remained in segregation for 15 days thereafter.

cided January 3, 1972. Additionally, the opinion points out, "that in ruling on a motion for summary judgment it is not the function of the district court to decide whether the factual allegations and averments of the opposing party are true . . ." (*id.* at 632).

Applying the foregoing rules and precedents in this Circuit, genuine issues of material fact are disclosed in the papers before the court, which preclude summary dismissal of the complaint as a matter of law.

Accordingly, defendant's motion to dismiss the complaint is denied pursuant to Rules 12(b) and 56, F.R.Civ.P., and it is so ordered.[6]

---

6. In so ruling the court is aware that the question of whether exhaustion of State judicial remedies should be required in prisoners' suits under 42 U.S.C. § 1983 is presently *sub judice* before the United States Court of Appeals sitting *en banc* in United States ex rel. Rodriguez v. McGinnis, et al., 451 F.2d 730 (2 Cir., Mar. 16, 1971) ; United States ex rel. Katzoff v. McGinnis, et al., 441 F.2d 558 (2 Cir. 1971) ; and United States ex rel. Kritsky v. McGinnis, et al., Dkt. # 35253 (on appeal from decision of N.D.N.Y., 313 F.Supp. 1247). The ruling is therefore subject to reconsideration in the light of that Court's eventual decision.

The court expresses its appreciation for the assistance rendered by William F. Connell, Esq., in undertaking to represent plaintiff prisoner without compensation or reimbursement for expenses.