Charmaine C. KOVACS,
Respondent/Appellant,

v.

Michael KOVACS, Appellant/Respondent,

and

John D. Harding, Guardian Ad Litem.

Charmaine C. KOVACS, Appellant,

v.

Michael R. KOVACS, Respondent,

and

John D. Harding, Guardian Ad Litem.

Nos. WD 47191, WD 47231.

Missouri Court of Appeals,
Western District.

Jan. 25, 1994.

R. Brian Hall, Gladstone, for respondent/appellant.

Deborah A. Tooley, Kansas City, for appellant/respondent.

Before HANNA P.J., and FENNER and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

This is an appeal from a dissolution of marriage action, wherein the fifteen year marriage between Charmaine Kovacs (Mother) and Michael Kovacs (Father) was terminated. Mother was awarded custody of the five children, visitation was denied, total child support of $1750 a month was awarded, Mother's request for both maintenance ($400 a month) and attorney fees ($6710) were denied. The evidence is viewed in a light favorable to the judgement. *Wilson v. Wilson*, 822 S.W.2d 917, 920 (Mo.App.1991).

There are five children ages 5 to 14. The evidence indicated there were problems between the Kovacs since early in their marriage, including instances of both spousal and child abuse. Father has a history of alcohol and drug use. Additionally, the record shows Father: hit all but the youngest child with a rubber hose (Mother also hit them with the hose but not as frequently or as severely); dislocated an arm of each of two of the children when they were younger, by jerking their arms too hard; and, had slapped the children with an open hand. Furthermore, Father spent little time at home doing things with the family. Their fourteen year old daughter, T., testified, *in camera*, she was afraid of her father.

At the time of filing for dissolution, Mother was employed as a department manager at a discount store making $885 every two weeks. Shortly after filing, she resigned because of problems "in my personal life with regards to" the dissolution. She has held a variety of jobs and has some education. At the time of trial, she had no job and no income. Father works for Ford Motor Company and earns approximately $40,000 per year. His average monthly income was $3,393.15. The court denied Mother's request for maintenance noting she "has the appropriate age, health, and education as well as work experience to be gainfully employed to support herself."

Mother testified her average monthly expenses were approximately $488 for herself, and $2420 for the children. She initially requested child support of $2420.28, but her final request to the court was for $1,644. Under the child support guidelines, the presumed amount was $1,167. The court awarded Mother $1750 per month in child support, finding the presumed amount calculated in Form 14 unjust to meet the children's reasonable needs, noting it would be unfair to take any more of Father's monthly income, and assumed Mother would soon be employed and, therefore, could contribute to their support.

Visitation was ultimately denied. Mother originally requested supervised visitation, and later changed it to a request for no visitation. The guardian ad litem requested no visitation be awarded to Father. No specific visitation request was made by Father. The court denied visitation on the grounds it found Father's behavior towards the children "sadistic."

## I.

### A. DEPARTURE FROM CHILD SUPPORT GUIDELINES WITHOUT SHOWING FIGURES USED

■ Father asserts it was erroneous for the court to depart from the Child Support Guideline Figures used on Form 14 without the court entering written findings including the actual figures used in calculating the non-Form 14 support amount. Rule 88.01(e) provides for the procedure when a court or administrative agency, after taking into account all the relevant factors of determining support, decides to vary from the Form 14 presumed amount. The rule states the presumption is rebutted and the amount awarded in a case is correct if there is entered, as

applicable here, a written finding the Form 14 amount, after consideration of all the Rule's factors, is unjust or inappropriate.

This court in *Harding v. Harding,* 826 S.W.2d 404, 407 (Mo.App.1992) held "... the court must enter a written finding, whether requested or not which includes the actual numbers used in calculating the non-Form 14 child support, as well as the factors which made the Form 14 amount inappropriate." *See also Clare v. Clare,* 853 S.W.2d 414, 415 (Mo.App.1993). "How a trial court can determine the amount of child support calculated pursuant to Form 14 is 'unjust or inappropriate' without first determining the correct figures to be used on Form 14 is difficult to explain." *Michel v. Michel,* 834 S.W.2d 773, 779 (Mo.App.1992) (citing *Harding v. Harding,* 826 S.W.2d 404 (Mo.App.1992)).

Although the trial court did not strictly comply with justifying its determination of inadequacy of the Form 14 amount, *Harding,* and *Michel,* there is more than sufficient evidence in the record here to satisfy the Rule 88.01(e) requirement the Form 14 amount was unjust and inappropriate. In this case, the Court's decree found the Form amount inadequate to meet the five children's reasonable needs, but did not calculate the amount needed only because of recognition the father could afford no more than the $1,750 amount awarded.

### B. FATHER'S INABILITY TO PAY CHILD SUPPORT AMOUNT

Father also asserts it was erroneous for the court to award child support of $1750 stating there was not substantial evidence indicating that he had the ability to pay the amount assessed and that the award took too much of his monthly income. From the evidence submitted, the court could have concluded Father had income of $3,393.15 per month which left him with a sufficient margin to meet his own needs. This point is denied.

### C. IN CAMERA INTERVIEW OF T.

Father asserts it was plain error to admit the testimony of T., their fourteen year old daughter, without having the child sworn or taking an affirmation.

First, this court notes the objection that the child was not adequately sworn in was not raised at trial. Where no objection is made when evidence is introduced at trial, error in its admission cannot be assigned on appeal. *In Interest of C.K.G.,* 827 S.W.2d 760, 766 (Mo.App.1992) (citing *Wilhoit v. Fite,* 341 S.W.2d 806, 817 (Mo.1960)).

Section 492.040, RSMo.1986 provides "Whenever the court by whom any person is about to be sworn shall be satisfied that such person has any peculiar mode of swearing connected with, or in addition to, the usual form of administering an oath, which is to him of more solemn and binding obligation, the court ... shall adopt that mode which shall appear to be most binding on the conscience of the person to be sworn." There is no special litany required in administering an oath. *State v. Bowlin,* 850 S.W.2d 116, 117 (Mo.App.1993); *State v. McClain,* 541 S.W.2d 351, 356 (Mo.App.1976). "The important feature, regardless of the form of oath, is its quickening of the conscience of the witness and the liability it creates for the penalty of perjury." *Bowlin,* 850 S.W.2d at 117. The record indicates it was made clear to T. that her testimony in chambers would have the same effect as if it were in a courtroom. Furthermore, the judge emphasized the importance of telling the truth, which T. said she understood. There is sufficient evidence in the record the witness understood the importance of telling the truth. See *State v. Williams,* 545 S.W.2d 680 (Mo.App.1976); *State v. Patterson,* 569 S.W.2d 266 (Mo.App.1978). This point is thereby denied.

### D. DENIAL OF VISITATION

Father asserts error in denying visitation with all five of his children on the grounds there was insufficient evidence to support the denial and, furthermore, asserts the court erred in not awarding at least limited or supervised visitation. Father relies on § 452.400 RSMo.Cum.Supp. to support the proposition that he is entitled to visitation:

"A parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that

visitation would endanger the child's physical health or impair his emotional development."

The court in finding Father's behavior "sadistic," implicitly found visitation would endanger the children's well being. *See Hrebec v. Hrebec,* 759 S.W.2d 851 (Mo.App.1988) (despite expert's recommendation of limited visitation, the court terminated visitation, noting the son was suffering from emotional abuse by his father). In matters pertaining to visitation rights this court gives deference to the trial court's assessment of what serves the best interest of the child. Judgment should be reversed only if it lacks substantial evidence to support it, if it is against the weight of the evidence, or if it erroneously declares or applies the law. *Shoemaker v. Shoemaker,* 812 S.W.2d 250, 253 (Mo.App.1991). This court finds there was sufficient evidence to deny Father visitation rights.

■ The evidence indicated that Father: drank and used drugs; hit the children with a rubber hose and, at times with an open hand; called the children names; had an erratic temper; and spent little time with the family when he had the opportunity to do so. The evidence showed the children were afraid of their Father, and the that family was getting along better without his presence. *See Hrebec,* 759 S.W.2d at 852 (modification of original decree terminating visitation by father held to be appropriate where children feared and disliked their father). This court finds the denial of visitation was not erroneous and was supported by substantial evidence. The facts indicating visitation would endanger the child's physical or emotional well-being, are deemed to have been found in accordance with the result reached. *Irwin v. Irwin,* 678 S.W.2d 861, 862 (Mo.App. 1984); R. 73.01.

■ With regard to limited or supervised visitation, § 452.400 does not require that the court award limited or supervised visitation if it finds visitation may endanger the children. The facts here indicated Father's behavior and parenting skills were such that even supervised or limited visitation was considered and found not in the children's best interest. Thus, it was properly denied.

## II.

### A. MAINTENANCE

■ The court stated no maintenance was to be awarded to Mother, noting in its findings and conclusions Mother "has the appropriate age, health, and education as well as work experience to be gainfully employed to support herself." § 452.335.1, RSMo.Cum.Supp.), provides that a court *may* grant maintenance "if the spouse seeking maintenance:

(1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and

(2) Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek outside employment."

Although § 452.335 provides ten factors to be considered before awarding maintenance, the test boils down to: 1) does a spouse have sufficient property to support herself; and, 2) does the spouse have the ability to support herself by means of appropriate employment? In applying § 452.335, the trial court has wide discretion in determining if maintenance is appropriate. *Ottmann v. Ottmann,* 829 S.W.2d 644, 647 (Mo.App.1992). On appeal the court presumes the trial court considered all the evidence in making its determination. *Bixler v. Bixler,* 810 S.W.2d 95, 101 (Mo.App.1991). Moreover, an appellate court should not disturb a maintenance award unless the decree is "patently unwarranted or is wholly beyond the means of the spouse who pays maintenance." *Sinclair v. Sinclair,* 837 S.W.2d 355, 360 (Mo.App.1992).

■ Courts generally have awarded maintenance in situations where the party seeking it, "has devoted a majority of her life to the household and maternal tasks, thereby, forfeiting the opportunity to develop occupational skills," or where the requesting party "requires further education or training to support himself;" i.e., rehabilitative maintenance. *Hurley v. Hurley,* 607 S.W.2d 169, 170 (Mo.App.1980). "Justice does not require provision of support to a spouse who is or may be prepared to become self-support-

ing." *Ottmann,* 829 S.W.2d at 647 (citing *Doerflinger v. Doerflinger,* 646 S.W.2d 798, 800 (Mo. banc 1983). Unemployment alone is not enough to require an award of maintenance. *See Beckman v. Beckman,* 545 S.W.2d 300, 302 (Mo.App.1976); *Hurley,* 607 S.W.2d at 169. Mere inability to get a job is insufficient grounds for an award of maintenance. *Id.; Ottmann,* 829 S.W.2d 644; *In Re Marriage of Lewis,* 808 S.W.2d 919 (Mo. App.1991). In the present case, there was evidence Mother received substantial marital assets and little marital debt. Furthermore, Mother had an employment and education history which indicate she could find appropriate employment. There was not an abuse of discretion in denying maintenance. This point is denied.

### B. ATTORNEY FEES

■ Mother appeals the trial court's denial of attorney fees. She contends Father should have to pay her attorney fees of $6,710.50 because he has the greater ability to pay. Additionally, she asserts error because the court requested the parties to stipulate as to the amount of their attorney's fees and not offer additional evidence.

§ 452.355 RSMo.Cum.Supp. provides:

1. The court from time to time after considering all relevant factors including the financial resources of both parties *may* order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under § 452.300–452.415 and for attorney fees, including sums for legal services rendered and costs incurred prior to the commencement for the proceeding or after entry of judgement....

(emphasis added)

Generally, a judge is considered an expert on the reasonableness of attorney's fees, and the decision whether to award fees will not be disturbed absent a finding of an abuse of discretion. *Flach v. Flach,* 645 S.W.2d 718, 722 (Mo.App.1982); *Burden v. Burden,* 811 S.W.2d 818, 821 (Mo.App.1991). To be successful on appeal, the complaining party must show the order is against the logic of the circumstances and is arbitrary and unreasonable. *Mistler v. Mistler,* 816 S.W.2d

241, 256 (Mo.App.1991). Moreover, this court has noted "very unusual" circumstances must be evidenced for the court to justify deviating from the general rule that each party bears his own litigation expenses. *Campbell v. Campbell,* 825 S.W.2d 319, 323 (Mo.App.1992). No unusual circumstances exist calling for a deviation from the general rule in the case at bar.

■ The previous holding also applies to Mother's related contention about evidence as to fees. Mother, during the course of the trial introduced evidence of attorney's fees via her testimony and admission of her bill into evidence. The court then asked if there could be a stipulation as to her total fees and if no stipulation could be made then it would schedule an additional hearing if one were requested. There was no stipulation, and no additional hearing. There is no indication the court did not consider the evidence before it. Her point is unclear, but since the court awarded nothing and was justified in doing so, the point is denied.

This matter is in all respects affirmed. Costs are assessed against the appellant Michael Kovacs.

HANNA, P.J., and FENNER, J., file separate concurring opinions.

HANNA, Judge, concurring.

I agree with the disposition of this case as decided by Judge Lowenstein, but wish to make a comment on two points mentioned.

Rule 88.01(e) requires that the trial court make findings of fact, whether requested or not, in determining the amount of child support. In my opinion the trial court made sufficient findings on this issue to allow us to properly review and to comply with Rule 88.01(e). *Harding v. Harding,* 826 S.W.2d 404, 407 (Mo.App.1992), in my opinion, goes too far by requiring that the court find the "actual numbers used in calculating the nonform 14 child support...." I do not believe that actual numbers are necessary in this case or in any case if the trial court does, as it did here, make findings without dollar figures. We can review the courts decision adequately without requiring actual numbers. In this case the court made findings which

are set forth in the majority opinion. They were sufficient for an understanding of the basis of its decision, the Harding decision notwithstanding.

Further, I do not agree with the majoritys plain error review of the sufficiency of the oath given to the minor. We review quite a large number of plain error requests in criminal matters, appropriately so, but I do not agree that it is in order to expand the role of that rule in civil cases except in the most serious situations.

Our review of the claimed error in this case must acknowledge that the complaining partys counsel was present in the courts chambers, with the solemn ambiance of that setting, and heard the court discuss with the minor the importance of an oath. Only now, on appeal, he considers the failure to swear the witness of such consequences as to have tainted the entire proceeding, resulting in manifest injustice.

Our plain error review must consider the claimed error if it resulted in manifest injustice. I assume that the majority has undertaken plain error review for no other reason than it has been requested. That reason is not, in my opinion, sufficient. It is clear that appellant was satisfied in the judges chambers that the child was duly impressed both with the solemnity of the occasion and with the importance of telling the truth. On its face, the point is without merit and I would decline to review.

FENNER, Judge, concurring.

Although I concur in affirming the judgment of the trial court, I write separately to clarify what I believe Missouri law requires with regard to the extent of the written finding entered by a trial judge who deviates from the presumed child support amount in Form 14, in accordance with Rule 88.01.

Judge Lowenstein cites to *Harding v. Harding*, 826 S.W.2d 404 (Mo.App.1992), noting that *Harding* states that when deviating from Form 14, the trial court must include the actual numbers used in calculating the non-Form 14 child support, as well as the factors which made the Form 14 amount inappropriate. *Harding* does so hold, but not in regard to an issue actually litigated in the case.

For purpose of consideration here, the issue presented in *Harding* was "whether the Rule 88.01 'presumptive figure' may be rebutted by the custodial parent's testimony of lower actual monthly expenses, and if so, is the custodial parent then locked into the figure testified to in court?" *Id.* at 406. In *Harding*, the court held that the trial court was not "locked into" the monthly expense testified to in court by the custodial parent. *Id.* at 407. However, the court held that where the presumed amount under Form 14 was $300 greater than the testimony presented at trial as to actual need, it was an abuse of discretion to award the Form 14 amount without citing factors in support thereof. *Id.* at 407. The court then stated as follows:

This is not at odds with Rule 88.01. As Rule 88.01 states, a court must enter a written or specific finding on the record that the Form 14 amount is unjust or inappropriate. When a custodial parent offers evidence rebutting the Form 14 presumption, the trial court must enter a written finding, whether requested or not, which includes the actual numbers used in calculating the non-Form 14 child support, as well as the factors which made the Form 14 amount inappropriate.

*Id.* at 407.

It is well established that a case is only authority for what it actually decides. *State ex rel. State Highway Commission v. Goodson*, 365 Mo. 260, 281 S.W.2d 858, 860 (1955). Where a statement in an opinion concerns an issue not litigated in the case, the statement is dictum and is not proper authority to support a contention in a subsequent case. *In re Incorporation of City of River Bend*, 530 S.W.2d 704, 707 (Mo.App.1975). Stated another way, "[a] judicial opinion should be read in the light of the facts pertinent to that particular case and it is improper to give permanent and controlling effect to casual statements outside the scope of the real inquiry of the case." *Union Electric Co. v. Platte–Clay Electric Coop., Inc.*, 814 S.W.2d 643, 648 (Mo.App.1991).

The language of *Harding* cited by Judge Lowenstein is dictum. The extent of find-

ings required to deviate from Form 14 was not at issue in *Harding,* and the statement of the court that the written finding must include the actual numbers used in calculating non-Form 14 support, as well as the factors which made the Form 14 amount inappropriate, was gratuitous to the issue as stated and addressed by the court.

Rule 88.01 provides, in pertinent part, as follows:

It is sufficient in a particular case to rebut the presumption that the amount of child support calculated pursuant to Civil Procedure Form No. 14 is correct if the court or administrative agency enters in the case a written finding or a specific finding on the record that the amount so calculated, after consideration of all relevant factors, is unjust or inappropriate.

Rules of the Supreme Court are interpreted by the same principles used in construction of statutes. *Adams v. Boring,* 826 S.W.2d 867, 870 (Mo.App.1992). The primary rule of statutory construction requires a court to ascertain the intent of the legislature by considering the plain and ordinary meaning of the words used in the statute. *Jones v. Director of Revenue,* 832 S.W.2d 516, 517 (Mo. banc 1992). When the language of a statute is clear and unambiguous, it is not proper for a court to forage among the rules of statutory construction to look for or impose another meaning. *Matter of Estate of Thomas,* 743 S.W.2d 74, 76 (Mo. banc 1988). Additionally, the legislature is presumed to know the state of the law at the time a statute is enacted. *Adams v. Boring,* 826 S.W.2d at 870.

Judge Hanna does not find *Harding* to be controlling, but he appears to interpret Rule 88.01 to require that the trial court make findings of the factors considered when deviating from the presumed amount under Form 14. I do not believe that Rule 88.01 requires findings of fact in regard to the factors considered. As written, Rule 88.01 merely requires the court to state for the record that the Form 14 amount is unjust or inappropriate, upon the court considering all relevant factors. If the Supreme Court had intended to require the court to make specific findings of the factors considered and the actual numbers used in calculating non-Form 14 support, rather than merely stating that it had considered all relevant factors, it could have so stated in the rule.

Judge Lowenstein also cites to *Michel v. Michel,* 834 S.W.2d 773, 779 (Mo.App.1992), and *Clare v. Clare,* 853 S.W.2d 414, 415 (Mo. App.1993), as supporting the language in *Harding* that speaks to the need for a trial court to give actual numbers used as well as the factors that cause a trial court to find child support calculated in accordance with Form 14 inappropriate. I find these cases distinguishable from the case at bar. In both *Michel* and *Clare,* the trial court failed to make a finding on the record "that the presumed amount was, after considering all relevant factors, unjust or inappropriate." *Michel,* 834 S.W.2d at 779; *Clare,* 853 S.W.2d at 415. Such a finding was made in the case at bar.

Additionally, in *Michel* there were several Forms 14 entered in the record and the trial court made no indication of which form it relied upon. *Michel,* 834 S.W.2d at 779. Likewise, in *Clare* there were two Forms 14 and the trial court did not indicate the information upon which it relied. *Clare,* 853 S.W.2d at 415. This was not an issue in the case at bar. Here, the Form 14 calculation which the court deemed unjust is clear from the record.

Research reveals two cases where the trial court deviated from the Form 14 presumed support without providing explanation other than that the Form 14 amount, after considering all relevant factors, was unjust or inappropriate. *Allard v. Allard,* 856 S.W.2d 64, 71 (Mo.App.1993); *Vehlewald v. Vehlewald,* 853 S.W.2d 944, 951 (Mo.App.1993). In both *Allard* and *Vehlewald,* the appellate court found that the record supported the finding of the trial court and affirmed.

Research further reveals four cases where the appellate court remanded for the trial court to either enter support in accordance with Form 14 or make a finding that considering all relevant factors, the presumed amount was either unjust or inappropriate. *Tuning v. Tuning,* 841 S.W.2d 264, 267 (Mo. App.1992); *K.R.W. by A.C.S. v. D.B.W.,* 830

S.W.2d 38, 41 (Mo.App.1992); *Beeman v. Beeman,* 816 S.W.2d 15, 17 (Mo.App.1991); and *Campbell v. Campbell,* 811 S.W.2d 504, 506–07 (Mo.App.1991). In none of these four cases was the trial court instructed to provide any explanation beyond finding the presumed amount unjust or inappropriate in the event that support was ordered other than as presumed under Form 14.

Additionally, in considering the application of Rule 88.01, the following cases have noted the need for the trial court to make a finding on the record that the amount calculated pursuant to Form 14, after considering all relevant factors, is unjust or inappropriate: *In re Marriage of Short,* 847 S.W.2d 158, 164–65 (Mo.App.1993); *In re Marriage of Garrison,* 846 S.W.2d 771, 776 (Mo.App. 1993); *Watkins v. Watkins,* 839 S.W.2d 745, 748 (Mo.App.1992); *Kieninger v. Kieninger,* 836 S.W.2d 515, 518 (Mo.App.1992); *Umphenour v. Umphenour,* 831 S.W.2d 764, 767 (Mo.App.1992); *Kessinger v. Kessinger,* 829 S.W.2d 658, 661 (Mo.App.1992); *Buchanan v. Buchanan,* 828 S.W.2d 946, 949 (Mo.App. 1992); *Wagner v. Wagner,* 823 S.W.2d 523, 526 (Mo.App.1992); *In re Marriage of Waggoner,* 818 S.W.2d 735, 738 (Mo.App.1991); *Hamilton v. Hamilton,* 817 S.W.2d 937, 939–40 (Mo.App.1991); *Mistler v. Mistler,* 816 S.W.2d 241, 254 (Mo.App.1991); *Rothfuss v. Whalen,* 812 S.W.2d 232, 237 (Mo.App.1991); and *Allen v. Allen,* 811 S.W.2d 58, 59 (Mo.App.1991). None of these cases required an explanation of the reasons the court found the Form 14 amount unjust or inappropriate although in some of the cases explanations were given by the trial court. Additionally, none of these cases required the trial court to recite the figures that the court relied on in deviating from the Form 14 amount.

In one of the most recent cases to address the application of Rule 88.01, *Vehlewald v. Vehlewald,* 853 S.W.2d 944, the court specifically noted that although the use of the Form 14 is mandatory, wide discretion is nonetheless vested in the trial court with respect to child support, and that discretion is expressly retained under section 452.340, RSMo Supp. 1992. *Id.* at 951 (citing *Rothfuss v. Whalen,* 812 S.W.2d at 237). Rule 88.01 is not intended to remove all discretion from the trial court nor does it require that the trial court make findings beyond the plain language of the rule.

Other than as discussed herein, I concur with Judge Lowenstein. Furthermore, for the reasons stated herein, to the extent that Judge Lowenstein declines to enforce the strict language of *Harding,* I concur.